## SCHEFFLER v. MORAN TOWING & TRANSPORTATION CO., Inc., et al.

### No. 13172.

District Court, E. D. New York.

May 17, 1933.

Edgar J. Treacy, of New York City, for libelant.

E. C. Sherwood, of New York City (H. B. Clark, of New York City, of counsel), for respondents.

CAMPBELL, District Judge.

This suit is brought by the libelant to recover from the respondents damages for personal injuries alleged to have been received by libelant while employed as a seaman on the tugboat Margaret A. Moran.

I find the facts as follows:

At all the times hereinafter mentioned, and at the time of the trial, the respondent Moran Towing & Transportation Company, Inc., was a corporation duly organized and existing under and by virtue of the laws of the state of New York.

At all the times hereinafter mentioned, and at the time of the trial, the respondent Tug Margaret A. Moran Corporation was a corporation duly organized and existing under and by virtue of the laws of the state of New York.

The libelant is a resident of the borough of Brooklyn, city of New York, and was on the day in question a seaman, and in or about September, 1931, shipped aboard the tugboat, Margaret A. Moran, as a cook, and was acting as such on board said vessel on September 29, 1931, at the rate of wage of $90 a month.

The libelant was an experienced deck hand and had formerly served as such, and, as a part of his duties as cook, he was, as was customary, required to perform the duties of stern line deck hand when required.

At all the times hereinafter mentioned, and at the time of the trial, the respondent Tug Margaret A. Moran Corporation was the owner of the tug Margaret A. Moran.

At all the times hereinafter mentioned, and at the time of the trial, the respondent Moran Towing & Transportation Company, Inc., operated the tugboat Margaret A. Moran under a bare boat charter, and as such charterer did man, victual, and navigate said tugboat at its own expense.

The full crew supplied by the charterer, the respondent Moran Towing & Transportation Company, Inc., consisted of the master, engineer, deck hand, fireman, and cook.

On the morning of September 29, 1931, the tug left Pier 1, New York, with all of the crew aboard except the deck hand who had missed the boat.

During the absence of the deck hand, the tug proceeded down to Erie Basin, to Robinson's Dry Dock. She then did a couple of jobs there and followed up a steamer to the West Shore Railroad, North River, on the New Jersey side of the river, Pier 7. After finishing the job there, she went over to Fifty-Third street, North River, right across the river, and made fast, and the master of the tug went ashore.

The master returned aboard and told the libelant he had two scows to pick up.

The tug then let go and went on the lower side of the pier and picked up one scow and put her on the end of the pier, and then went on the other side of the pier, the other slip, and picked up another scow and put her alongside the first scow, both scows being headed up the river, and the tide ebb.

The scows were made fast with a head line, and the tug was outside.

After returning from the shore again, the master put the straps one on the forward end of each of the starboard and port forward bitts.

The tug then pushed in between the two scows, the head line between the two scows having been slackened, but the starboard scow remaining made fast to the pier, and, on orders from the master of the tug, the libelant took the place of the absent deck hand and

passed the strap from the port side of the tug to the scowman on the Moran No. 113, the scow on the port side of the tug, which the scowman put over the bitt next to the after bitt of the scow, and the libelant then passed out to the scowman a head line, which he made fast on the forward bitt of the scow, and libelant took a few turns around the forward bitt.

The fireman of the tug, on orders from the master, acted as stern line deck hand.

The master of the tug then ordered the libelant to put up the strap on the starboard side.

The libelant, without any necessity for doing so, had negligently put his left leg inside the bight of the strap on the port side, and as the port scow settled back, due to the action of the tide, the port strap tightened up, and the master of the tug called to libelant, "Look out, Julius," and rang two quick bells to go back to take the strain off the line.

The libelant's left leg was caught, but the quick action of the master in causing the tug's engines to be put astern took the strain off the strap, and the libelant's leg was released.

The libelant continued on duty as cook all of the remainder of the day.

About 11 o'clock a. m. the tug and tow rounded-to at Christopher street and picked up the deck hand of the tug, who had missed the boat that morning, and was picked up as thereafter arranged.

The next day the libelant continued on duty as cook until about 12 o'clock noon, and then went to the Marine Hospital, Staten Island, where he remained from October 1st to January 15th.

The usual operation for torn ligaments and cartilage having been performed on his left leg on October 26th, after which libelant stayed in bed 12 to 14 days, when the bandage was taken off, and libelant stayed in bed for another week, after which he received physiotherapy treatment for three weeks.

The libelant was then given something which rendered him unconscious, and he does not know what was done to his leg, after which he received the same physiotherapy treatment again up until the 15th day of January, when he went home in accordance with his desire.

After he went home he took treatment as an out patient at the Hudson and Jay Street Hospital.

The doctors found they could do nothing further for the libelant.

His injuries are not permanent, and with use he will probably have a perfectly serviceable leg by September 29th, next ensuing.

The libelant suffered from a moderate degree of varicosity in the right leg, and evidence of arthritis in both knees, neither of which was caused by the accident.

The strap in question was made of new rope and in good condition and fit for the purpose for which it was used, and was not twisted or kinked.

The tugboat Margaret A. Moran was properly equipped, but was not properly manned, as by her certificate she was required to carry five men, including the master. The officers and crew were competent men, and the respondent, Moran Towing & Transportation Company, Inc., had employed a full crew, but the master proceeded to operate the tug without the deck hand, who had missed the boat.

No officer of either of the respondents was aboard the tug at the time of the accident.

The value of the tug was $4,000, and the accrued freight was $36, and the right of the respondents to limit liability to $4,036, if liable for any damages to the libelant, was established.

From the facts as found, the respondent Moran Towing & Transportation Company, Inc., was at fault in operating the tug with four men, and the libelant was guilty of contributory negligence.

The tug Margaret A. Moran was unseaworthy in not being properly manned.

The respondent Moran Towing & Transportation Company, Inc., had provided a proper crew, but under orders of the master, for whose actions the said respondent was responsible, the tug proceeded with her work for some hours during the absence of the deck hand.

I cannot say that the accident did not result from the insufficiency of the number composing the crew, for the reason that the double duty of cook and deck hand imposed on libelant may well have played its part in causing the accident, and this was not occasioned by any emergency during the voyage, but because the tug started out short-handed.

The libelant was an experienced deck hand, and the performance of the duties of stern line deck hand is required of the cook when necessary.

This is according to the custom of the harbor.

The libelant seems to base his claim of liability on the part of the respondents, first, because, as he alleges, there was a twist in the strap, and says that there always are twists in the straps.

The evidence does not sustain his claim of twists in the strap in question, as both the master of the tug and the scowman of the port scow, Moran No. 113, did not see any twists.

Further, libelant says he told the captain of the Moran No. 113 to put it right on the bitt, and the captain of the Moran No. 113 says that he did put it on right, and he did.

The libelant, secondly, bases his claim on the unseaworthiness of the tug in operating with less than the number of men required by her certificate. This contention is sustained, as the libelant, due to the absence of the deck hand, was compelled, not only to perform the duties of cook, and was engaged in preparing the dinner, but also the duties of deck hand, which were much greater than the duties of stern line deck hand, which he was ordinarily required to perform.

The master of the tug Margaret A. Moran did not, by any negligent act at the time of the accident, contribute to the injury to the libelant; on the contrary, he not only warned the libelant of his danger, but by his very timely action, causing the engines of the tug to be put speedily astern, undoubtedly saved the libelant's left leg.

The engine of the tug Margaret A. Moran had been stopped before her master ordered the libelant to put out the lines, and naturally the port bow set back from the effect of the tide, and the libelant negligently contributed to the accident in unnecessarily putting his left leg in the bight of the strap and leaving it there while he made fast the bow line.

The right of the respondents to limit liability to the value of the boat of $4,000, with accrued freight of $36, making $4,036, was clearly shown, as there was no privity on the part of the respondents with the act of the master of the tug in proceeding with four instead of five in crew including himself, as required by the certificate of said tug.

I find as conclusions of law:

That the respondents are entitled to limit their liability to $4,036, if liable for any damages to the libelant.

That the respondent Moran Towing & Transportation Company, Inc., the charterer, charged with the duty of manning, victualing, and navigating the tug Margaret A. Moran under a bare boat charter, its agents or servants, negligently operated said tug as an unseaworthy tug, in that the master, in the absence of the deck hand regularly employed by said respondent, operated said tug with a crew of four men, including himself when she was undermanned, as five men were required by her certificate, and in so doing required the libelant, not in an emergency arising after starting out, the dual duty of cook and deck hand, which was much greater than the duties usually required of the libelant as cook and stern line deck hand, and could not be performed by him with the same efficiency, because of the time required, as they could be performed by two persons, the deck hand and the cook.

That the libelant, with knowledge of the duties and dangers to be apprehended, negligently contributed to the damages he received, without any necessity for so doing, by putting his left leg inside the bight of the strap on the port side while passing out to the scowman on the Moran No. 113 a head line and leaving it there until his leg was caught, and the damages he suffered must be reduced in proportion to his contributory negligence.

That the respondent Tug Margaret A. Moran Corporation was without fault.

That the libelant is entitled to a decree against the respondent Moran Towing & Transportation Company, Inc., for $1500, with costs, and the respondent Tug Margaret A. Moran Corporation to a dismissal of the libel, without costs.

That a decree may be entered in accordance herewith. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.