William M. **GIBBONS, Trustee of the property of Chicago, Rock Island and Pacific Railroad Company, Debtor, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, John B. Criswell and F. D. Tuffley, Defendants.**

No. 77 C 783.

United States District Court, N. D. Illinois, E. D.

Dec. 20, 1978.

E. D. Curlee, Nicholas G. Manos, Williams Manos, Rutstein, Goldfarb & Sharp, Ltd., Chicago, Ill., for plaintiff.

John J. Naughton, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

*Motion for Summary Judgment*

Plaintiff brought this action to impeach an award rendered by Task Force Number Eight (the "Board"), a board of arbitration. Plaintiff is Trustee of the Property of Chicago, Rock Island and Pacific Railroad Company (the "Railroad"), a "carrier" within the meaning of the Railway Labor Act. Defendant United Transportation Union (the "Union") is the collective bargaining agent for plaintiff's trainmen and enginemen employees. Defendants Criswell and Tuffley are two of the three member Board who found in favor of the Award challenged by plaintiff.

The Award was rendered pursuant to Article XII of the National Agreement of January 27, 1972 ("National Agreement"), a collective bargaining agreement between the Railroad and the Union. Article XII establishes procedures whereby the Railroad could establish interdivisional-interseniority district service in freight and passenger service, subject to the establishment of appropriate conditions. Pursuant to Article XII, plaintiff initiated proceedings to create a rule for establishing interdivisional service. When negotiations terminated, the Railroad submitted the dispute to the Board, created on March 25, 1976, for arbitration. Defendant Criswell was appointed by the National Mediation Board to be the neutral member of the Board. The Board announced its Award on January 5, 1977.

On March 8, 1977, plaintiff filed its Petition in this Court seeking both to impeach the Award and a declaration that, *inter alia*, the proceedings and the Award of the Board are invalid. In its first count, the Railroad alleges that the Board failed to comply with certain requirements mandated by Section 7 of the Railway Labor Act (the "Act"), 45 U.S.C. § 157 and Section 8 of the Act, 45 U.S.C. § 158, specifically subsections b, d–k, m and n in rendering the Award. In Count II, plaintiff alternatively asks this Court to impeach and hold invalid the Award for failure to conform to the stipulations of the National Agreement.

Plaintiff's third count seeks a declaration pursuant to 28 U.S.C. § 2201 adjudging, *inter alia*, that (a) the National Agreement does not constitute a valid agreement to arbitrate pursuant to the Act; (b) the Board was not lawfully established, hence invalidating its proceedings and Award; (c) that the Award is not binding for lack of unanimity among the arbitrators; and (d) that defendant Criswell be disqualified from participating in any future arbitration under the National Agreement between the Railroad and the Union.

On September 21, 1977, we held that the jurisdiction of this Court is properly invoked under 28 U.S.C. §§ 1331 and 1337. *Gibbons v. United Transportation Union*, 437 F.Supp. 646 (N.D.Ill.1977). Pending before the Court is plaintiff's motion for summary judgment. Rule 56, F.R.Civ.P. For the reasons set forth below, plaintiff's motion is granted. However, the Court shall retain jurisdiction of this action to allow the parties an opportunity to agree whether to have this Court enter judgment on those provisions of the Award which they determine to be valid, pursuant to 45 U.S.C. § 159 Fourth.

## FACTS

The facts of this case are set out in the parties' thorough Pretrial Order, specifically the Agreed Stipulation of Facts and the parties' agreed exhibits attached thereto. We find from the Pretrial Order and other exhibits on file that there is no genuine issue of material fact and that summary judgment is appropriate. The following is a summary of the stipulated facts.

Prior to the National Agreement of January 27, 1972, collective bargaining agreements between the Railroad and the Union did not provide a mechanism whereby the Railroad could establish interdivisional-interseniority district service in freight and passenger service. Article XII of the National Agreement authorizes the Railroad to establish such runs, subject to the establishment of certain conditions. Conditions for the protection of employees affected by such runs are set out in Article XIII of the National Agreement.

On November 12, 1975, E. E. Margason, then the Railroad's Vice President of Labor Relations, sent written notice to officers of the Union expressing the Railroad's intent to operate runs through home terminals, pursuant to Article XII of the National Agreement. Plf.Ex. # 1 (references to exhibits are to those exhibits attached to the Pretrial Order). In response, K. L. Brockman and W. R. Myers, of the Union, met with Margason on November 21, 1976, to discuss the notice. No agreement was reached. Brockman, Myers and Margason again met on January 27, 1976 and made no significant progress on the Railroad's proposal. On February 19, 1976, Margason

wrote the National Mediation Board to request that an arbitration Task Force be established. Plf.Ex. # 3. Officers of the Union and the Railroad again met on March 26, 1976 and reached no agreement.

The National Mediation Board responded to the Railroad's request to create the arbitration Board. In a letter dated March 25, 1976, the National Mediation Board named defendant Criswell to be the neutral member of the arbitration Board (Task Force No. 8). Plf.Ex. # 4. The Board met, along with officers of the Union and Railroad, on August 17, 1976. No witnesses were sworn and no testimony was received. The Railroad submitted its proposal of conditions under which interdivisional runs would be established. Plf.Ex. # 5. The written proposal, entitled "Carrier's Submission," had not been the subject of negotiations between representatives of the parties. At the same meeting, the Union submitted its proposal. Plf.Ex. # 6. Plaintiff objected to its admission on the ground that the proposal had not been made prior to the commencement of the Board. No negotiations took place on the Union's proposal.

On August 31, 1976, Margason, on behalf of the Railroad, prepared a document setting forth the Railroad's objections to the admission of the Union proposal and to the substance of the proposal. Plf.Ex. # 7. The Union set out its position regarding special allowances to homeowners in a letter dated August 24, 1976 and its response to the Railroad's position in a letter dated September 9, 1976. Def.Exs # # 8 and 9, respectively.

In the presence of Union and Railroad officers, the Board convened for the second time on October 11, 1976. The Board heard arguments concerning the admission of the Union's proposal. The parties stipulate that no negotiations occurred during this session and that at no time did either party comply or attempt to comply with Sections 7 and 8 of the Act, 45 U.S.C. §§ 157 and 158. The Board announced its award on January 5, 1977. The parties stipulate that the Award was not rendered within the time limit specified in the National Agree-

ment. However, the time limit was extended for 45 days. Dep. of Kenneth L. Brockman. Plaintiff filed this Petition to impeach the Award on March 8, 1977.

Plaintiff's theory of its case is twofold. First, plaintiff contends that the Award is invalid because the parties did not comply with provisions of the Railway Labor Act outlining the process for the resolution of a major dispute. Second, plaintiff contends that the Board overstepped its jurisdiction by ruling on issues which were not stipulated questions for arbitration in the National Agreement.

## I.

### Procedural Objections

As stated above, plaintiff alleges that the Board and the parties failed to comply with the procedures established by §§ 7 and 8 of the Act, 45 U.S.C. §§ 157 and 158, for the resolution of a "major" dispute. 45 U.S.C. § 157 sets out the manner in which a controversy is to be submitted to arbitration. 45 U.S.C. § 158 specifies the form and contents of the required agreement to arbitrate. It is undisputed that the Award was not rendered according to the procedures set out in the Act.

Plaintiff argues that the procedures outlined by the Act to facilitate the settlement of disputes are mandatory. Cf., *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 545, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (Stone, J.). For example, the Act requires that parties negotiate disputes to exhaustion before submitting the dispute to arbitration. *Ibid.*; *Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); *Chicago & North Western Railroad Co. v. U. T. U.*, 402 U.S. 570, 574–575, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971). In the latter case, the Supreme Court, although discussing a provision of the Act not directly involved here, stated:

"Accordingly, we think it plain that § 2 First was intended to be more than a mere statement of policy or exhortation to the parties; rather, it was designed to be a legal obligation, enforceable by

whatever appropriate means might be developed on a case-by-case basis." 402 U.S. 570 at 577, 91 S.Ct. at 1735.

It is undisputed that the Board was not created accordingly to § 7 of the Act, but rather pursuant to Article XII of the National Agreement. It is also undisputed that the Union and the Railroad did not exhaust all avenues of negotiation before the Railroad submitted the dispute to arbitration and that the Board did not proceed in strict compliance with the procedural requirements of § 8 of the Act.

Nevertheless, the record clearly shows, and the Railroad does not otherwise argue, that it was the Railroad which unilaterally submitted the request to the National Board to convene Task Force No. 8 to arbitrate the dispute raised by the Railroad's proposal to establish interdivisional runs. See, Plf.Ex # 3, Letter of E. E. Margason dated February 19, 1976. There is no indication that the Union ever joined the Railroad in the request. The record also shows that the Railroad submitted its request for arbitration after only two meetings with officers of the Union.

■ Traditionally, courts are reluctant to set aside an arbitration award. *United Steelworkers of America v. Enterpris Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (hereinafter, "Steelworkers Trilogy").

■ It is also well settled that defects in proceedings prior to or during arbitration may be waived if a party acquiesces to the arbitration with knowledge of the defect. *Order of Railway Conductors v. Clinchfield*, 407 F.2d 985, 988 (6th Cir. 1969), *cert. den.*, 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92, and cases cited therein; *Krieter v. Lufthansa German Airlines, Inc.*, 558 F.2d 966, 968 (9th Cir. 1977). "Moreover, if the impeaching party's own action contributes to a variance from the prescribed procedure, such

party may be estopped to complain of the variance." *Order of Railway Conductors v. Clinchfield, supra*, 407 F.2d at 988. As the court stated in *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir. 1964):

"A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act."

■ The record in this case is devoid of any indication that the Railroad objected to any defect in the arbitration proceedings on the ground that the dispute resolution was not conducted in compliance with the Act. To the contrary, the record shows that the Railroad instigated the allegedly premature arbitration to be conducted in conformity with the National Agreement and awaited the outcome before it challenged the non-compliance with the Act. We therefore hold that the Railroad is estopped from impeaching the Award on procedural grounds and deny summary judgment on Count I of the Petition to Impeach Award of Board of Arbitration.

II.

*Substantive Objections*

The gist of plaintiff's second objection to the Award is substantive. In essence, plaintiff contends that the Board conferred benefits on the employees of the Railroad which were precluded by Articles XII and XIII of the National Agreement.

Article XII sets up a procedure whereby the Railroad may establish interdivisional-interseniority service. Article XII, § 2 establishes the procedure whereby the Railroad can operate runs through a "home terminal." Article XII, § 3 provides certain conditions that must be met before the Railroad can establish interdivisional-interseniority runs. The "scope and purpose" of Article XIII are to provide "for fair and equitable arrangements to protect the interests of certain of the carriers' employees represented by tne [Union] who are adversely affected by the application of . . . Article XII." National Agreement, Article XIII.

Plaintiff argues that Articles XII and XIII limit the benefits that the Board may confer on Railroad employees in an arbitration award. In other words, plaintiff contends that the Board cannot confer anything more or less than those provisions expressly provided in the National Agreement.

In this Court's Memorandum Opinion of September 21, 1977, we held that the Court could assert jurisdiction over this action because it arises from a "major" dispute, as that term is used in reference to the Railway Labor Act. The Opinion stated in pertinent part:

"We therefore agree with plaintiff that while the 1972 National Agreement established the right of the Railroad to create interdivisional service, it left unresolved the conditions under which that service could be inaugurated. The dispute is one which 'look[s] to the acquisition of rights for the future,' a classic major dispute. Since plaintiff properly alleged that this action is brought under § 9 Third of the Railway Labor Act, 45 U.S.C. § 159 Third, we hold that this Court has jurisdiction over Counts I and II of plaintiff's petition to impeach under 28 U.S.C. §§ 1331 and 1337." 437 F.Supp. 646 at 649.

Therefore, if this Court were to wholly accept plaintiff's position, then, pursuant to the law of the case as expressed in the prior opinion and *Elgin, Joliet & Eastern Railway Co. v. Burley, supra,* 325 U.S. at 723, 65 S.Ct. 1282, we would lack subject matter jurisdiction in this action. The logical extension of plaintiff's position, that the Board is strictly limited in its powers to award the substantive benefits already provided in the National Agreement, is that the Board's sole function is to resolve a dispute which "relates either to the meaning or proper application of a particular provision [of the National Agreement] with reference to a specific situation or to an omitted case." *Elgin, Joliet & Eastern Railway Co. v. Burley, supra,* 325 U.S. at 723, 65 S.Ct. at 1290. If the Board's only function was to interpret or apply the terms

provided for protection of employees in Articles XII and XIII, and then to award only those provisions to the parties in arbitration, the dispute would be a "minor" dispute. Plaintiff's unyielding position that the National Agreement is the exclusive source of conditions to establish interdivisional service, unamenable to modification or addition, is markedly inconsistent with its position when it sought the jurisdiction of this Court.

Although consideration of Articles XII and XIII in their entirety is required by this motion, the language of certain provisions is particularly pertinent to a determination of whether the Board overstepped its bounds by awarding benefits to employees which were not expressly conferred in the National Agreement.

The introduction to Article XII states in pertinent part:

"An individual carrier may establish interdivisional, interseniority district, intradivisional or intraseniority district service, in freight or passenger service, subject to the following procedure."

Article XII, § 2(a) states in pertinent part:

"The carrier may serve notice of intent to establish a rule under which such runs may be established. Within 10 days of receipt of such notice by the organization, its authorized representatives and those of the carrier shall meet for the purpose of establishing conditions, *consistent with the minimum requirements of Section 3 of this article, to be included in such a rule. . . .*" (Emphasis added).

". . . The decision of this Task force prescribing the conditions under which such runs may be established consistent with *the minimum requirements* of Section 3 of this Article . . ." (Emphasis added).

"In its decision the Task Force shall include *among other matters decided the provisions set forth in Article XIII of this Agreement for protection of employees adversely affected* as a result of the discontinuance of any existing runs or the establishment of new runs resulting from

application of this rule, and in addition may give consideration to whether or not such rule should contain a provision that special allowances to home owners should be included *because of moving to comparable housing in a higher cost real estate area.*" (Emphasis added).

Article XII, § 3 provides in pertinent part:

"Reasonable and practical conditions shall govern the establishment of the runs described above including *but not limited to the following*:

(a) [Rate of pay for runs over 100 miles.]

(b) [Transportation for crews away from on and off duty points.]

(c) [Meal allowances.]

(d) [Meal schedules.]" (Subsections paraphrased, emphasis added).

Article XIII, § 2(a)(1) provides in pertinent part:

"Subject to the other provisions of this Article, the protective benefits of Sections 3, 4, 5 and 6 of this Article XIII apply to:

(1) Employees adversely affected directly or indirectly by an Implementation of Article XII—Interdivisional Service."

■ The determination of whether or not the Board exceeded its authority in making the Award must be made by reference to the four corners of the instrument constituting the agreement between the parties. *National Maritime Union of America v. Federal Barge Lines, Inc.*, 304 F.Supp. 256, 258 (E.D.Mo.1969), citing *Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.*, 330 F.2d 562 (8th Cir. 1964).

■ As reflected by the Pretrial Order, plaintiff's position is that the "employee protection conditions verbatim, must be included in any Article XII Task Force decision and except to give consideration to whether or not a provision that special allowances to home owners should be included because of moving to comparable housing in a higher cost real estate area, the 'employee protection' issue has already been settled and is not within the jurisdiction of an Article XII Board of Arbitration Task Force procedure." Plf.Ex. # 7, Letter of E. E. Margason, dated August 31, 1976, p. 4 (emphasis in original). We find, however, that the language of the National Agreement quoted above indicates a different intent on the part of the Railroad and the Union when they executed the National Agreement. The National Agreement clearly states that the employee protection conditions set out in Article XII, § 3 are "minimum requirements." Article XII, § 3, itself, states that the Board must include but is *not limited* to the conditions required in subsections (a) through (d). Therefore, plaintiff's assertion that Part II of the Award is invalid because it affords employees protection beyond those conferred by Article XII is vitiated by the clear language of the National Agreement.

■ Nevertheless, we must agree with plaintiff that certain portions of the Award exceed the stipulated questions set forth by the National Agreement. For example, the National Agreement expressly delineates those employee-homeowners who are entitled to benefits. Article XII, § 2(a), ¶ 3, expressly limits the Board to considering special allowances for homeowners who, because of the institution of interdivisional runs, move to "*comparable* housing in a *higher cost real estate area.*" Part I, § 4 of the Award, however, extends substantial benefits to "any employee . . . covered by the terms of § 1 . . . who is a 'homeowner' . . . [and] elect[s] to retain his home . . ." See also, Award, § 3. There is no language in the National Agreement that would allow the Board to consider granting special allowances to "any" homeowner. We must disagree with defendant's characterization of plaintiff's objection on this point as "hypertechnical." In an uncontroverted affidavit, plaintiff's current Director of Labor Relations estimates that this provision has a substantially adverse economic impact on the Railroad. Affidavit of Charles P. Fischbach, ¶ 8, pp. 8–13.

Moreover, defendant concedes that the "Separation Allowance" provision of the Award exceeds that contemplated by Article XIII, § 5 of the National Agreement, which computes separation allowance by a formula set by § 9 of the Washington Job Protection Act ("WJPA"), by stipulating "that the WJPA provisions can be substituted for those set out in the Award of Task Force No. 8." Def.Mem. Opposing Motion for Summary Judgment, p. 9. Defendants therefore concede that at least the "Separation Allowance" provision of the Award must be set aside.

We therefore grant plaintiff summary judgment on Count II of its Petition, pursuant to 45 U.S.C. § 159 Third (b), which provides in pertinent part:

"Such petition for the impeachment or contesting of any award so filed shall be entertained by the court only on one or more of the following grounds:

(b) That the award does not conform, nor confine itself, to the stipulations of the agreement to arbitrate; . . ."

Although this Court is keenly aware of the policy against setting aside an arbitration award, (see, *Steelworkers Trilogy, supra*), the Railway Labor Act requires that the entire Award be set aside if part of the Award is held invalid.

45 U.S.C. § 159 Fourth provides:

If the court shall determine that a part of the award is invalid on some ground or grounds designated in this section as a ground of invalidity, but shall determine that a part of the award is valid, the court shall set aside the entire award: Provided, however, that, if the parties shall agree thereto, and if such valid and invalid parts are separable, the court shall set aside the invalid part, and order judgment to stand as to the valid part. (Emphasis in original).

45 U.S.C. § 159 Seventh provides:

If the petitioner's contentions are finally sustained, judgment shall be entered setting aside the award in whole or, if the parties so agree, in part; but in such case the parties may agree upon a judgment to be entered disposing of the subject matter of the controversy, which judgment when entered shall have the same force and effect as judgment entered upon an award.

In light of the provisions quoted above, we direct the parties to meet and discuss whether they will agree that certain provisions of the Award are valid and whether judgment may stand as to those valid provisions. Upon conclusion of discussions, if the parties agree to sustain certain portions of the Award, this Court will entertain a motion to order judgment to stand as to those portions.

Accordingly, summary judgment is granted.