In the Matter of the Arbitration between COMPAGNIA ITALIANA TRANSO-CEANICA DI NAVEGAZIONE, S.p.A., Petitioner,

and

HUGO NEU & SONS INTERNATIONAL SALES CORP., Respondent.

No. 82 CIV 7695 (LBS).

United States District Court, S.D. New York.

Feb. 23, 1983.

Walker & Corsa, New York City, for petitioner Compagnia; William J. Blumenschein, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for respondent Hugo Neu & Sons; Lars Forsberg, New York City, of counsel.

## OPINION

SAND, District Judge.

Petitioner Compagnia Italiana Transoceanica Di Navegazione, S.p.A. ("Compagnia") has moved this Court for an order pursuant to 9 U.S.C. § 9 confirming an arbitration award dated September 10, 1982. Respondent Hugo Neu & Sons International Sales Corp. ("Hugo Neu") opposes such motion on the ground that the arbitration panel that rendered the award was not appointed in accordance with the governing contract provision. Upon consideration of the memoranda and affidavits and contentions of counsel at oral argument, and having resolved any and all factual issues in respondent's favor, the Court is of the opinion that the award should be confirmed.

On October 5, 1977, Compagnia, as owner, entered into a written contract of charter with Hugo Neu, as charterer, of the vessel *Transoceania Silvia.* Clause 41 of the charter states:

"It is mutually agreed that should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three persons at New York for arbitration, one to be appointed by each of the parties herein, and the third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be commercial men. Should the two so chosen not be able to agree who the third Arbiter should be, then the New York Produce Exchange is to appoint such third arbitrator. The third arbitrator is to be an admiralty attorney."

The last sentence of this clause, requiring that the third arbitrator be an admiralty attorney, is, as agreed upon by the parties, a typewritten addition to a standard arbitration provision for charter contracts.

Hugo Neu contends, and Compagnia does not contest, that this insertion was made at the request of Hugo Neu; its purpose was to attain "greater certainty that the result would be more predictable and more consistent with legal precedents." Affidavit of John L. Neu, dated December 10, 1982, ¶ 3.

Subsequently, disputes arose between Compagnia and Hugo Neu in connection with claims made by the former under the charter. In the first half of 1980, when it became apparent that these disputes would require resolution by arbitration, Hugo Neu was in contact with its counsel, Burlingham, Underwood & Lord, and specifically with Lars Forsberg, to represent Hugo Neu in the arbitration. Included in the papers received by Mr. Forsberg at that time was a copy of a letter dated February 29, 1980, sent by Alexander Nichols to Hugo Neu advising that Peter Avagliano, an arbitrator appointed by Hugo Neu, and Captain Aghelos C. Boulalas, an arbitrator appointed by Compagnia, had selected Mr. Nichols as the third arbitrator and procedural chairman. Exhibit 3 to Reply Affidavit of William J. Blumenschein, dated Jan. 5, 1983.

The first hearing was held on June 19, 1980, and was attended by the three nominated arbitrators; Mr. Forsberg; and Mr. William Blumenschein of Walker & Corsa, counsel for Compagnia. Prior to the empaneling of the arbitration board, each of the nominees stated on the record his previous contacts with any of the parties or counsel and his maritime-related experience. With regard to the latter, Mr. Nichols stated:

MR. NICHOLS: I am the president of Brokers & Management Corporation. Brokers & Management Corp. is one of the companies under the group of companies otherwise identified as the Callimanopulos Group.

We represent owners and we attend vessels while they are in New York. And we do chartering for such vessels as dry cargo ships or tankers.

In the course of my employment with Brokers & Management, which goes back ten years, I have fixed ships with the firm of Mr. Avagliano, and to the best of my knowledge, all of these fixtures were uneventful and we never had a claim.

The same is also true with the firm of Hugo Neu. Again, I would like to say that all our fixtures were uneventful and did not involve disputes, litigations or arbitrations.

. . . .

I am familiar with both law firms representing the parties primarily due to my duties as a claims adjuster some ten, twelve years ago when I was working for LaMont Burns and handling cargo claims and FG & D claims.

I was in touch with both the firm of Walker & Corsa and Burlingham Underwood & Lord, although I have never met Mr. Forsberg before. This is my first time that I met him, at these proceedings.

Having made these disclosures, I would like to also add that I find myself to be able to render a fair and just opinion and decision on this matter. I have no financial interest of any sort in the outcome of this award and I invite comments regarding additional clarifications that either counsel may have.

MR. FORSBERG: I have no questions.
MR. BLUMENSCHEIN: Nothing from me.
THE CHAIRMAN: With these disclosures having been made, I think that the next item of the agenda is for you to administer the oath and the Panel to be sworn in.

Transcript of June 1980 Hearing, pp. 10–13, submitted as Exhibit 1 to Reply Affidavit of William J. Blumenschein, dated January 5, 1983. Also stated at that time was the fact that both Captain Boulalas and Mr. Nichols were fellow members of the Society of Maritime Arbitrators, an organization of commercial men, some five or six of whom hold law degrees but none of whom are practicing attorneys. Affidavit of Charles L. Trowbridge, dated January 28, 1983, ¶ 2; Affidavit of Alexis Nichols, dated January 6, 1983, ¶ 4.

Further, Mr. Blumenschein presented Mr. Forsberg with a three-page submission agreement setting forth, *inter alia,* the full text of clause 41 of the charter and the names of the three arbitrators nominated. Noting that Mr. Blumenschein had signed the agreement on behalf of Compagnia, Mr. Nichols asked Mr. Forsberg to sign on behalf of Hugo Neu. The latter responded that he had not yet seen the agreement, but would examine it and advise the panel later of whether he would sign it. However, the agreement was placed unread and unsigned into Mr. Forsberg's files, and there was no further demand that Mr. Forsberg sign it.

Counsel appeared before the panel for a second hearing in November, 1980, and submitted memoranda in January, 1981, at which time the matter was fully submitted. In May, 1982, the panel members met to discuss the dispute. On August 31, 1982, Mr. Nichols forwarded to his fellow arbitrators a draft award, dated September 10, 1982, the date then anticipated for the delivery of the final award to the parties. Captain Boulalas communicated his concurrence with the draft several days later. On or about September 7, 1982, Mr. Avagliano expressed his disagreement with the draft and stated that he would inform Mr. Nichols shortly as to his final position.

Apparently wholly as a matter of coincidence, Mr. John Neu of Hugo Neu telephoned Mr. Avagliano on or about September 10, 1982, to inquire as to the status of the proceeding, having heard nothing about it since the parties' submission of briefs in January, 1981. Mr. Avagliano stated that "although the matter had not been decided", the other two arbitrators had apparently adopted a position adverse to that of Hugo Neu.

On or about September 15, 1982, Mr. Nichols and Captain Boulalas met and signed the previously circulated draft, five copies of which were forwarded on September 17th to Mr. Avagliano for signature, either in support or ·dissent. Also on September 15th, Mr. Neu in the course of a telephone conversation with counsel, specif-

ically Mr. Herbert Lord, first became aware that Mr. Nichols was not an admiralty attorney. Counsel, in turn, first focused attention on the charter's arbitration clause which required that the third arbitrator be an admiralty attorney. Later that day, Mr. Lord mailed a letter to each member of the panel, stating that Mr. Nichols, pursuant to the charter, could not qualify as the third arbitrator and asking that Mr. Nichols withdraw.

Upon receipt of this letter, Mr. Avagliano refused to take any further action with regard to the five signed copies of the award he had received from Mr. Nichols until the issue of the latter's status was resolved. After a period of a month and a half, Mr. Avagliano returned the copies to Mr. Nichols, which were then distributed to the parties with Mr. Avagliano's refusal to sign noted therein.

Placing principal reliance on *Western Canada Steamship Co. v. Cia. de Nav. San Leonardo,* 105 F.Supp. 452 (S.D.N.Y.1952), Hugo Neu now opposes confirmation of the award. Hugo Neu argues that because an arbitration panel must be constituted strictly in accordance with the provisions of the governing arbitration clause, the award at issue—delivered by a panel made defective by Mr. Nichols' membership—should not be confirmed. Hugo Neu further contends that the requirement that the third arbitrator be an admiralty attorney was not waived, because waiver requires "full knowledge of the facts". Memorandum in Opposition, at 10–11 (citing for comparison *In re Petrolite,* 84 F.Supp. 446, 447 (S.D.N.Y.1949)).

In considering these contentions, we begin with the principle that courts are properly reluctant to discard the fruits of an arbitration fairly conducted. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Order of Railway Conductors and Brakemen v. Clinchfield Railroad Co.,* 407 F.2d 985 (6th Cir.1969), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1970). Arbitration is designed to resolve disputes promptly and inexpensively and to avoid technicalities. *E.g., District Lodge No. 71 v. Bendix Corp.,* 218 F.Supp. 742, 749 (W.D.Mo.1963).

Accordingly, it is "well settled that defects in proceedings prior to or during arbitration may be waived if a party acquiesces to the arbitration with knowledge of the defect." *Gibbons v. United Transportation Union,* 462 F.Supp. 838, 842 (N.D.Ill.1978); *Order of Railway Conductors, supra,* 407 F.2d at 988. "Moreover, if the impeaching party's own action contributes to a variance from the prescribed procedure, such party may be estopped to complain of the variance." *Gibbons v. United Transportation Union, supra,* 462 F.Supp. at 842, *citing Order of Railway Conductors v. Clinchfield, supra,* 407 F.2d at 988.

We are of the view that these principles are fully applicable here and argue persuasively in favor of the confirmation of the award.

It cannot be disputed that Hugo Neu's counsel knew or should have known that Mr. Nichols was not a member of the admiralty bar. The recitation at the June 1980 hearing by Mr. Nichols of his business experience and arbitrators' association should have strongly indicated to Mr. Forsberg that Mr. Nichols, although an experienced "commercial man", was not an attorney.

Indeed, as Mr. Forsberg himself makes clear, his "error" with regard to Mr. Nichols' appointment was not a belief that Mr. Nichols was an attorney but rather a failure to note that the arbitration clause in the charter had a provision requiring Mr. Nichols to be an admiralty attorney. Mr. Forsberg states: "While I should have checked the arbitration clause in the charter to determine its requirements concerning the appointment of a panel of arbitrators, I failed to do so." Affidavit of Lars Forsberg, dated December 8, 1982, ¶ 6.

█ The only issue that remains, then, is whether Mr. Forsberg's knowledge of Mr. Nichols' status is to be imputed to his client, Hugo Neu. Elementary principles of agency compel an affirmative answer to this question. *E.g., Nolan v. Sam Fox Publish-*

*ing Co.*, 499 F.2d 1394, 1398 (2d Cir.1974) (unimportant what agent told principal about the knowledge former acquired; such knowledge is imputed to latter); *Ferrara v. Scharf*, 466 F.Supp. 125 (S.D.N.Y.1979). Thus, even if we were to concur in respondent's contention that "waiver" requires knowledge as measured by a subjective rather than objective standard, respondent clearly possessed the requisite knowledge as to Mr. Nichols' technical nonqualification. It is a further basic proposition of agency law, that where an authorized agent fails faithfully to adhere to his principal's instructions, the consequences of that dereliction are not visited upon the third party, and any recourse which the principal may have would be against the agent. Accordingly, any objection once available to Hugo Neu owing to Mr. Nichols' lay status must be found at this point to have been waived. It would be inequitable and unduly prejudicial to Compagnia, which relied on the apparent acceptability of Mr. Nichols to Hugo Neu, presented its full case to the panel, and secured a favorable award, to now require it to begin anew by reason of an arguably technical defect in the panel's composition that was known to Hugo Neu at the outset of the proceedings.

In light of this waiver or estoppel, Hugo Neu's reliance on *Western Canada, supra,* is simply misplaced. As the court there made clear, the defective composition of the arbitration panel was wholly the product of the two initially selected arbitrators "who never informed the charterers [the objecting party] that a third arbitrator would not be appointed." 105 F.Supp. at 435. In this case, however, the "defect" was indisputably brought to the attention of the objecting party.

In light of the reasoning stated above, the arbitration award dated September 10, 1982, as between Compagnia and Hugo Neu is confirmed.

SO ORDERED.