CAPITAL DISTRICT CHAPTER OF NEW YORK STATE, P.D.C.A., and the Management Trustees of the Capital District Painters Pension Fund, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES, LOCAL UNIONS NOS. 201, 12 AND 62 and the Union Trustees of the Capital District Painters Pension Fund, Defendants.

No. 83–CV–877.

United States District Court, N.D. New York.

Dec. 29, 1983.

Daniel J. Smitas, Albany, N.Y., for plaintiffs.

Pozefsky, Pozefsky & Bramley, Albany, N.Y., for defendants; William Pozefsky, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action involves a dispute concerning the arbitrability of a deadlock among the six trustees of a union trust fund as provided for by an agreement and declaration of trust. Jurisdiction is predicated upon § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). Before this Court is Capital District's petition for an order compelling arbitration by a court-appointed arbitrator, 9 U.S.C. § 4,[1] and staying the arbitration which already has been commenced.[2]

### II

The facts underlying the present controversy essentially are undisputed. Petitioner Capital District Chapter of New York State, P.D.C.A. ("PDCA"), is an employer association of painting construction contractors and an affiliated chapter of the National Painting and Decorating Contractors of America. Petitioner Management Trustees of the Capital District Painters Pension Fund ("management trustees") are the agents acting on behalf of PDCA in the administration of the Capital District Painters Pension Fund ("trust fund"). Respondent International Brotherhood of Painters and Allied Trades, Local Unions Nos. 20, 12, and 62 ("union") is a labor organization. Respondent Union Trustees of the Capital District Painters Pension Fund ("union trustees") are the agents acting on behalf of the union in the administration of the trust fund.

The trust fund was established in early 1964 as part of a collective bargaining agreement entered into between PDCA and the union for the purpose of providing pensions to eligible employees. As provided for by an "Agreement and Declaration of Trust" ("trust agreement"), the fund was to be administered by six trustees, three of whom were to be selected by PDCA and three of whom were to be selected by the union. In matters affecting administration of the fund, article V of the trust agreement provides the following:

A deadlock shall be deemed to exist for purposes of this section whenever (a) a proposal, nomination, motion, or resolution made or seconded by any two Union Trustees or any two Association Trustees is not adopted or defeated by the vote required by Section 5.9. or (b) a quorum is lacking at a duly called meeting and such quorum is not secured at an adjournment of such meeting within fifteen days.

Whenever a deadlock as hereinabove defined occurs, any two Trustees may give written notice to the remaining Trustees declaring that a deadlock exists

---

1. 9 U.S.C. § 4 provides, in relevant part:

   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ....

2. Petitioners also seek an order directing that respondents pay all arbitration costs including attorneys' fees.

and calling a meeting of the Trustees to agree upon an impartial umpire to break such a deadlock by deciding the dispute in question. Such notice shall specify the dispute in question causing such deadlock, and copies of such notice shall likewise be sent to the Union and the Association Employers. If the Trustees fail to select such impartial umpire within five days after such action [notice?] is given, then any two or more of the Trustees may file a petition with the U.S. District Court in Albany, New York, requesting such Court to appoint an impartial umpire to decide the dispute in question which caused such deadlock ....

Trust agreement, art. V, § 5.10.

At a trustees' meeting held on September 20, 1982, a union trustee proposed that the fund's office be moved from its location in Clifton Park, New York to the Albany Labor Temple at Third Street in Albany. That motion was deadlocked. While it is not clear whether the notice required under § 5.10 ever was given, the respective trustees nonetheless agreed to submit the deadlock to arbitration.[3] In accordance with the rules of the American Arbitration Association, Professor John E. Sands was selected to be the arbitrator and the arbitration hearing was scheduled for March 8, 1983. On the evening of March 7, 1983, the night before the scheduled arbitration, another meeting of the trustees was held. At that meeting, one of the management trustees introduced a motion for the purpose of identifying the issues to be determined by Professor Sands. Specifically, the motion sought to include, as part of the subject matter of the upcoming arbitration, "whether we continue or discontinue the agreement of 1966 whereby the Manage-

ment Trustees select the administration[4] and location of the Fund and the office and the Union Trustees arrange for the attorney to handle the legal matters." (Answer to petition, ¶ 20). This motion, too, resulted in a deadlock and it appears that no notice, as required by § 5.10, ever was served.

The arbitration hearing commenced as scheduled the next day before Professor Sands. At the hearing, petitioners attempted to submit to Professor Sands "all controversies existing at the time of the arbitration hearing, including ... [w]hether an agreement among the Trustees made in 1964[5] allowing for selection of the Fund Administrator and the location of the Fund Office by the Employer-Trustees and the selection of the attorney for the Trustees by the Union-Trustees was made and whether there is sufficient reason to abrogate continuation of the agreement or arrangement." (Amended complaint, ¶ 14). Professor Sands, however, refused to determine any question other than whether the fund's office should be moved, reasoning that this deadlocked issue was the only issue properly before him. Specifically, in his written Opinion and Award, arbitrator Sands noted the following:

At the first day's hearing I determined that my arbitral jurisdiction extended to the following issue and no other:

What shall be the resolution of the deadlock created by the three-three vote on the motion ... to move the Fund office to the Labor Temple....

In reaching that conclusion I rejected the employer trustees' contention (opposed by the union trustees) that I must consider and determine as well an *addi-*

---

**3.** The failure to provide notice under § 5.10 generally would serve to preclude arbitration. However, it is clear that any such defect was, in this instance, waived, since the matter thereafter proceeded to arbitration without objection from either party. "It is ... well settled that defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect." *Order of Railway Conductors & Brakemen & Brotherhood of Railroad Trainmen v. Clinchfield Railroad Co.,* 407 F.2d 985, 988 (6th Cir.), *cert.*

*denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969); *see also Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740–41 (2d Cir.1978); *Gibbons v. United Transportation Union,* 462 F.Supp. 838, 842 (N.D.Ill.1978).

**4.** So in original. Probably should read "administrator."

**5.** So in original. Probably should read "1966."

*tional* deadlock reached at a trustees meeting on March 7, 1983, the night before the first hearing in this case.... That new deadlock concerned the continued viability of an alleged 1966 agreement between the employers and union dividing responsibility for fund administration by assigning to the union trustees appointment of the Fund's attorneys and assigning to the employer trustees appointment of the Administrator and determination of the location of the Fund's offices. The basis for my determination, explained in detail at pages 20–23 of the Transcript, was that as a tie-breaker I lacked power in absence of agreement by the parties to expand my jurisdiction beyond the deadlocked issue which had been processed to arbitration by me.

(Opinion at 2–3) (emphasis in original).[6]

Petitioners' objections to the arbitrator's handling of the dispute narrows to a claim that arbitrator Sands improperly excluded consideration of the 1966 agreement.[7] Apparently, petitioners contend that once an arbitrator is chosen for a particular deadlocked issue, any subsequent deadlocked issue can be submitted to the same arbitrator without following the procedures outlined in the trust agreement. No support has been offered for this proposition, however, and this Court is unpersuaded as to its validity. Moreover, this argument appears never to have been suggested to arbitrator Sands.

Respondents contend that the arbitrator's determination was the only correct one since petitioners failed to comply with the procedural requirements regarding arbitration provided for in the trust agreement. Moreover, they suggest that even if the 1966 agreement were to be viewed as properly before the arbitrator, the dicta contained in the arbitration award, i.e., that ERISA would render the alleged agreement void, would be dispositive of petitioners' objections. The dispositive inquiry for this Court, therefore, entails simply whether or not compliance with the arbitration procedures provided in the trust agreement is necessary and, if so, whether petitioners' failure to comply *vel non* with these procedures precludes vacation of the award.

### III

Because an arbitration award already has been rendered concerning the instant dispute, petitioners' request to stay the proceedings before Professor Sands will be treated as a request to vacate his award, 9 U.S.C. § 10.[8] Accordingly, it is

---

6. After concluding that the 1966 agreement was not properly before him, and that he would therefore not consider any evidence pertaining to that agreement, arbitrator Sands then offered "a more significant basis for rejection [of consideration of the alleged agreement.]" Opinion at 3. Specifically, Professor Sands held:

Although arguably legal when made in 1966, that agreement could not operate as an appropriate basis for trustees' fiduciary judgments after Congress's 1974 enactment of the Employee Retirement Income Security Act ("ERISA"). (Transcript, p. 83–85.) Holding that, as a tie-breaking arbitrator, I must apply the same fiduciary standards of decision as the trustees themselves, I announced that I would decide the deadlocked resolution based on the following appropriate fiduciary concerns relevant to the best interests of the Fund's beneficiaries: (1) safety and security of Fund records, (2) cost and appropriateness of rental space for Fund operations, and (3) beneficiaries' interest in convenient access to Fund offices. (Transcript, pp. 28–29, 30, 97.) Opinion at 3–4.

7. Petitioners also object to the arbitrator's "limited" consideration of the proposed move of offices, suggesting that limiting the question to an "either/or" situation, that is, either keeping the office in Clifton Park or shifting it to Albany and ignoring the possibility of some other "neutral" location, represented "an improper restriction to arbitrate issues in dispute between the parties." (Petition to compel arbitration, ¶ 17.) This Court finds no merit to petitioners' argument. Since arbitrator Sands' role was limited to "tie-breaking" the deadlocked motion on whether to move the fund offices to Albany, and since no other suggested location was advanced in the motion, he doubtless felt constrained to cast his vote on the precise issue before him. There simply is no basis upon which to conclude that in so doing arbitrator Sands either exceeded or abused his authority.

8. 9 U.S.C. § 10 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

important to note the limits of this Court's powers in reviewing an arbitration award. The law is well settled that a federal court may not interject itself into the merits of a controversy which the parties contractually have agreed to submit to arbitration. As the Supreme Court has noted, "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.... The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 598–99, 80 S.Ct. 1358, 1360, 1362, 4 L.Ed.2d 1424 (1960) ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards"). This long standing principle of limited review recently was reaffirmed by the Supreme Court:

Under well established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one.... When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by the arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.

*W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* — U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)). Bearing in mind this rather narrow scope of review, the particular objections raised by petitioners will be considered.

The essential objection urged by petitioners concerns, simply, the failure of arbitrator Sands to consider application of the alleged 1966 agreement. The reasons for arbitrator Sands' decision not to consider the agreement are set out clearly at pages 20–23 of the hearing transcript and reiterated in his subsequent Opinion and Award at page 3. Professor Sands explained:

I further understand that there was a new deadlock on another issue at last night's trustees' meeting. I understand the Management Trustees at this hearing have asked me to expand my jurisdiction or rather to modify the question before me to consider the deadlock raised last night, which may be at the heart of the question which is before me as a result of the September 1982 deadlock, but nevertheless, was not a deadlock within the definition of 5.10, which exists for the purposes of this section whenever a proposal nomination, motion or resolu-

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

tion made or selected by any two designated trustees or any two association trustees is not adopted or defeated by the vote required by Section 5.9. That defines deadlock, and within that definition is the deadlock that existed in September of 1982, and that has, in fact, been processed to arbitration by me pursuant to the parties' arbitration agreement. . . .

.      .      .      .      .

It may well be that you have a new deadlock that should go to arbitration pursuant to your Fund procedures. I just don't see that I have the power to expand today's proceeding to incorporate that.

(Transcript, pp. 22–23).

■ In reviewing the decision of the arbitrator, this Court may vacate his award only if it finds there exists one of the specific grounds contained in 9 U.S.C. § 10. *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980); *Bell Aerospace Co. v. Local 516, International Union, United Automobile, Aerospace & Agricultural Implement Workers of America,* 500 F.2d 921, 923 (2d Cir.1974); *Puerto Rico Maritime Shipping Authori-*

*ty v. Star Lines, Ltd.,* 496 F.Supp. 14, 15 (S.D.N.Y.1979). The provision of the act upon which petitioners primarily rely is contained in subsection (d), providing that the award may be vacated "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d).[9] For the reasons which follow, this Court concludes that the decision of the arbitrator should not be vacated.

■ It is clear that in reaching his decision not to entertain consideration of the alleged 1966 agreement, the arbitrator was doing nothing more than enforcing the procedural prerequisites to arbitration contained in the trust agreement. Having concluded that § 5.10 of that agreement permitted arbitration only of issues properly noticed under the terms of the agreement, Professor Sands was entirely correct in not recognizing the proposed arbitral issue of the 1966 agreement since the trustees had failed to comply with the mandated notice procedures. The process of arbitration being entirely contractual, *see Davis v. Chevy Chase Financial Ltd.,* 667 F.2d 160, 165 (D.C.Cir.1981) ("contours of the arbitrator's

---

9. A second statutory ground upon which petitioners seem to be seeking vacatur of the award is that contained in 9 U.S.C. § 10(c) which provides that vacatur will be appropriate "[w]here the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." Petitioners take issue with the fact that arbitrator Sands refused to consider evidence of the alleged 1966 agreement. It is clear, however, that arbitrator Sands did in fact consider such evidence but ultimately determined that it was irrelevant to the issue before him. Specifically, Professor Sands noted:

Well, I will not foreclose your putting that agreement into the record if you have written—if you have that agreement in writing or document or memoranda in incorporating that agreement. I will not foreclose your ability to put into the record material and competent evidence. That, I think, should be arbitral misconduct. I merely state for the record that I think that unless you convince me otherwise, I would find that less relevant to the fiduciary considerations which go into determining the question of the location of

the Fund offices, I would consider issues of cost, issues of beneficiary service, issues of security of records that are relevant to the servicing of the beneficiaries of the trust, which I think are principal fiduciary concerns.

(Transcript, p. 30). Eventually, arbitrator Sands determined that the agreement was irrelevant to the issue before him, Opinion at 3, and found that, as a matter of law, any such agreement would be rendered meaningless in light of the subsequent enactment of ERISA. This Court is not entitled to second guess arbitrator Sands' decision to limit his consideration of the offered evidence even if that decision was erroneous. *Office of Supply, Government of the Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 379–80 (2d Cir.1972); *Cobec Brazilian Trading & Warehousing Corp. v. Isbrandtsen,* 524 F.Supp. 7, 9 (S.D.N.Y.1980); *Refino v. Feuer Transportation, Inc.,* 480 F.Supp. 562, 565 & n. 3 (S.D.N.Y.1979), *aff'd mem.,* 633 F.2d 205 (2d Cir.1980). Accordingly this Court finds no basis under 9 U.S.C. § 10(c) upon which to vacate the award.

authority in a given case are determined by reference to the arbitral agreement"), the parties must comply with the relevant contract provisions in order to invoke the arbitral process. Moreover, it has long been settled that questions involving procedural compliance or default lie exclusively within the province of the arbitrator. In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court held:

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration .... Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Id.* at 557, 84 S.Ct. at 918;[10] *see also Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890 (2d Cir.1982); *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Brothers Co.,* 625 F.2d 1092, 1093 (3d Cir.1980); *Conticommodity Services Inc. v. Philipp & Lion,* 613 F.2d 1222, 1226 (2d Cir.1980); *Bressette v. International Talc Co.,* 527 F.2d 211, 215 n. 6 (2d Cir.1975); *Sunrise Undergarment Co. v. Undergarment & Negligee Workers' Union, Local 62,* 419 F.Supp. 1282, 1286 (S.D.N.Y.1976). Here, the arbitrator determined that arbitration concerning the 1966 agreement was not available because of petitioners' procedural default in failing to provide the required notice. That decision is subject to only limited review, *Ottley v. Sheepshead,* 668 F.2d at 890, and this Court cannot say that that decision lacked any "colorable justification," *id.* at 891; *see*

*Wire Service Guild, Local 222 v. United Press International, Inc.,* 623 F.2d 257, 261 (2d Cir.1980), since the record is clear that no notice ever was given.

Because this Court concludes that the arbitrator properly refused to consider the issue of the 1966 agreement, vacatur of his award is not warranted.

■ With respect to petitioners' request that this Court compel arbitration before a court-appointed arbitrator, two points are in order. First, in order for such a directive to issue, it must appear that petitioners contractually are now entitled to such arbitration. *See Janmort Leasing, Inc. v. Econo-Car International, Inc.,* 475 F.Supp. 1282, 1287, 1288 (E.D.N.Y.1979); *Atlanta Shipping Corp. v. Cheswick-Flanders & Co.,* 463 F.Supp. 614, 617 (S.D.N.Y. 1978); *Lea Tai Textile Co. v. Manning Fabrics, Inc.,* 411 F.Supp. 1404, 1407 (S.D. N.Y.1975); *see also* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration *or the failure to comply therewith is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement") (emphasis added). Because this Court agrees with arbitrator Sands that petitioners failed to comply with the procedural conditions precedent to arbitration, it cannot now compel arbitration. This, however, suggests the second point, viz., that petitioners are not precluded from raising the issue of the 1966 agreement anew so that arbitration on that issue properly may be had. This of course assumes that petitioners first will comply with the requirements of § 5.10.

■ Finally, regarding petitioners' request that respondents be directed to pay "all necessary arbitration costs, including reasonable attorney's [sic] fees," it is not clear whether petitioners seek a prospec-

---

**10.** The Second Circuit has construed the *Wiley* decision as not limited to only those cases in which the procedural dispute is factually limited to the merits of the arbitral issue. *Rochester Telephone Corp. v. Communication Workers of America,* 340 F.2d 237, 239 (2d Cir.1965).

tive fee award for the anticipated (but herein denied) compelled arbitration, or simply for the costs incurred with respect to the arbitration before Professor Sands. As to the former, consideration of petitioners' request is academic in light of this Court's determination that arbitration will not be compelled. With respect to the latter, this Court is persuaded that such an award is not justified since petitioners are not prevailing parties. Moreover, it is well settled that in "suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification ... or if the party resisting arbitration did not have a 'reasonable chance to prevail ....'" *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Brothers Co.*, 625 F.2d 1092, 1094 (3d Cir.1980) (citations omitted). Measured against this standard, it is clear that petitioners would not be entitled to attorneys' fees even were they prevailing parties.

## IV

Because this Court finds that the decision of arbitrator Sands is supported by the facts before him and by the trust agreement itself, and because petitioners have failed to comply with the procedural prerequisites to the institution of arbitration, the petition to vacate the award and to compel arbitration is denied.

It is so Ordered.