743 F.2d 142
 101 Lab.Cas. P 11,178
 CAPITAL DISTRICT CHAPTER OF NEW YORK STATE, P.D.C.A., and
the Management Trustees of the Capital District
Painters Pension Fund, Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES,
LOCAL UNION NOS. 201, 12 AND 622, and the Union
Trustees of the Capital District
Painters Pension Fund,
Defendants-Appellees.
 No. 1128, Docket 84-7092.
 United States Court of Appeals,
Second Circuit.
 Argued May 9, 1984.
Decided Aug. 31, 1984.
 
 Daniel J. Smitas, Albany, N.Y., for plaintiffs-appellants.
 William Pozefsky, Albany, N.Y. (Pozefsky, Pozefsky & Bramley, Albany, N.Y., of counsel), for defendants-appellees.
 Before OAKES, VAN GRAAFEILAND and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appellants Capital District Chapter of New York State, P.D.C.A. ("Capital District") and the Management Trustees of the Capital District Painters Pension Fund appeal from a memorandum decision and order, and a judgment issued thereon entered January 3, 1984, of the United States District Court for the Northern District of New York, Roger J. Miner, Judge, converting, sua sponte, appellants' request to stay arbitration into a motion to vacate an arbitration award, denying the motion to vacate, and denying a request to compel arbitration and requests for attorneys' fees.
 
 
 2
 For the reasons set forth below, we affirm in part, reverse and remand in part, and vacate in part.
 
 I. BACKGROUND
 
 3
 Appellant Capital District, an employer association, and appellees International Brotherhood of Painters and Allied Trades, Local Unions Nos. 201, 12 and 62 ("Unions"), entered into a collective bargaining agreement in 1960. Pursuant to their collective bargaining relationship, Capital District and the Unions formed the Capital District Painters Pension Fund ("Fund") in 1964, through the execution of an Agreement and Declaration of Trust ("Trust Agreement"). The Fund established pension benefits for eligible employees. Under the terms of the Trust Agreement, the Fund is administered by six trustees; three of whom are selected by Capital District ("Management Trustees") and three of whom are selected by the Unions ("Union Trustees"). Article V of the Trust Agreement sets forth the method for resolving disputes when the trustees are deadlocked on matters affecting the administration of the Fund. Specifically, Section 5.10[1] of Article V provides, in substance, that if a deadlock occurs, two trustees may give written notice to the remaining trustees that a deadlock exists, and that the trustees may then agree upon an impartial umpire to break the tie. If the trustees are unable to agree upon an umpire, they can petition the United States District Court for the Northern District of New York to appoint an umpire.
 
 
 4
 For several years prior to 1982, the Fund's office was located in Clifton Park, New York. However, at a trustees' meeting held on September 20, 1982, one of the Union Trustees proposed that the office be moved from its Clifton Park location to the Albany Labor Temple in Albany, New York. This proposal was voted upon by the trustees and resulted in a deadlock; the three Management Trustees opposed the move and the three Union Trustees voted in favor of the move. In an attempt to resolve the deadlock the trustees agreed to use the American Arbitration Association as the forum for arbitration, and Professor John E. Sands was chosen to serve as the arbitrator. The first arbitration proceeding was scheduled for March 8, 1983.
 
 
 5
 At a trustees' meeting conducted on the evening before the scheduled arbitration, the Management Trustees contended that in 1966 the parties had agreed, inter alia, that the Management Trustees would select the location of the Fund office.[2] Relying on this alleged agreement, one of the Management Trustees made a motion for the purpose of identifying the issues to be determined by Professor Sands. Specifically, the motion sought to include as part of the subject matter for the upcoming arbitration, "whether we continue or discontinue the agreement of 1966." This motion was voted upon and resulted in a deadlock.
 
 
 6
 At the arbitration hearing the next day, appellants attempted to submit to Professor Sands the issue of the validity and effect of the 1966 agreement. Professor Sands, however, stated:
 
 
 7
 I understand the Management Trustees at this hearing have asked me to expand my jurisdiction or rather to modify the question before me to consider the deadlock raised last night, which may be at the heart of the question which is before me as a result of the September 1982 deadlock, but nevertheless, was not a deadlock within the definition of [Section] 5.10 [of the Trust Agreement], which exists for the purposes of this section whenever a proposal nomination, motion or resolution made or selected by any two designated trustees or any two association trustees is not adopted or defeated by the vote required by Section 5.9. That defines deadlock, and within that definition is the deadlock that existed in September of 1982, and that has, in fact, been processed to arbitration by me pursuant to the parties' arbitration agreement.
 
 
 8
 ....
 
 
 9
 It may well be that you have a new deadlock that should go to arbitration pursuant to your Fund procedures. I just don't see that I have the power to expand today's proceeding to incorporate that.
 
 
 10
 Transcript of March 8, 1983 at 22-23.
 
 
 11
 Despite this initial determination, however, the arbitration accepted, along with other evidence, the minutes of certain trustee meetings submitted by appellants in an attempt to demonstrate the existence of the 1966 agreement. Professor Sands reviewed those minutes and explained:
 
 
 12
 I reviewed the minutes ... of October 25th, 1967 and January 18th, 1968 which seem to constitute a pretty clear memorandum of agreement which then existed among the trustees as to the allocation of the responsibility.... It is my conclusion that that agreement which was proper when made in 1966 as an agreement between Labor and Management Trustees as to the allocation of certain responsibilities is no longer relevant under [the Employee Retirement Security Act ("ERISA"), 29 U.S.C. Secs. 1001 et seq.] as a basis for a fiduciary and purely fiduciary judgment as to the location of the plan offices. Since I, on this basis, find evidence that the agreement is irrelevant and immaterial to the resolution of the question before me, therefore I will not entertain evidence--I will foreclose from the record evidence of that agreement as a basis for determining the question before me, and that is the deadlock on the location of the plan office or moving the plan office to the Albany Labor Temple.
 
 
 13
 Id. at 83-84.
 
 
 14
 Appellants objected to the arbitrator's narrow construction of the question presented and his refusal to consider the 1966 agreement in deciding the question. Accordingly, they requested an adjournment so that they could petition the federal court for an order compelling arbitration of all the issues presented, including the effect of the alleged agreement in deciding whether to move the Fund office. The arbitrator granted their request and the hearing was adjourned to May 4, 1983, to afford appellants time to obtain a stay and to get a ruling from the district court.
 
 
 15
 On April 27, 1983, the parties agreed to postpone the May 4th hearing. The following day, April 28, appellants sought an indefinite postponement from the American Arbitration Association. That request was denied and the arbitration was rescheduled for July 21, 1983. On July 15, six days before the rescheduled arbitration date, appellants filed a petition in the district court; notice of that petition was not served on appellees until July 19, 1983. No temporary stay was requested in that petition, and it was not noticed to be heard until July 29, eight days after the rescheduled arbitration hearing. In an amended petition filed on July 20, 1983, appellants sought an order compelling arbitration by a court-appointed arbitrator, staying the arbitration before Professor Sands, and awarding appellants costs and attorneys' fees.
 
 
 16
 The arbitration before Professor Sands resumed on July 21, 1983, the rescheduled date. Appellants' attorney sought another adjournment; this request was denied, and appellants' attorney refused to take part in the hearing. On July 29, 1983, appellants argued before Judge Miner in support of the relief requested in their petition.
 
 
 17
 While the matter was sub judice in the district court, Professor Sands issued an opinion and arbitration award, dated August 30, 1983. Therein, after considering the safety and security of the Fund's records, the cost and appropriateness of rental space for the Fund's operations, and the beneficiaries' interest in convenient access to the Fund's office, the arbitrator decided that the office should be moved to the Albany Labor Temple.
 
 
 18
 Nearly four months later, on December 29, 1983, Judge Miner issued the memorandum decision and order that forms the basis of this appeal. 581 F.Supp. 840. First, since an arbitration award had already been rendered, the district judge converted, sua sponte, appellants' request to stay arbitration into a request to vacate the arbitration award. Then, he denied the request to vacate, finding that the arbitrator correctly had declined to entertain appellants' contention with respect to the 1966 agreement, since they had failed to comply with the procedural requirements set forth in the Trust Agreement. Next, Judge Miner held that appellants' failure to comply with the procedural conditions precedent to arbitration also prevented him from compelling arbitration, but he noted that appellants were not precluded from raising the 1966 agreement issue anew. Finally, the district judge denied appellants' requests for attorneys' fees. Final judgment was entered on January 3, 1984. This appeal followed.
 
 II. DISCUSSION
 
 19
 At the outset, we must address the district court's decision to treat appellants' request to stay arbitration as a request to vacate the August 30, 1983 arbitration award. According to appellants, this sua sponte conversion was improper and it prejudiced their position by precluding them from seeking vacature of the award at a later date. We are unpersuaded by this argument.
 
 
 20
 Section 12 of the Arbitration Act, 9 U.S.C. Sec. 12 (1982), provides a three-month limitations period for the making of a motion to vacate or modify an arbitration award. Specifically, a motion to vacate an arbitration award must be served on the adverse party within three months from the date the award is filed or delivered. Id. The arbitration award herein was dated August 30, 1983, and the American Arbitration Association transmitted a copy of the award to the parties on September 2, 1983. Nearly four months elapsed before the district court's decision was rendered on December 29, 1983. During that interval appellants did not seek to stay enforcement of the award and they did not move to amend their pending judicial proceeding to include a motion to vacate the award. In light of appellants' failure to comply with the time limits prescribed by section 12 regarding motions to vacate arbitration awards, they cannot now be heard to argue that they are prejudiced by the district court's conversion. Indeed, given appellants' failure to take action in the face of the arbitration award, Judge Miner's decision to convert the request for a stay into a motion to vacate was warranted under the circumstances.
 
 
 21
 Turning to the district court's treatment of the motion to vacate, however, we do not agree with its analysis. During the arbitration proceeding on March 8, 1983, Professor Sands identified the question before him as "[w]hat shall be the resolution of the deadlock created by the three-three vote on the motion ... to move the Fund office to the Labor Temple." When the Management Trustees requested that the arbitrator consider the validity and effect of the 1966 agreement, which purportedly empowers the Management Trustees to determine the location of the Fund office, Professor Sands refused. He acknowledged that the agreement was "at the heart" of the question before him, but he declined to consider the agreement, finding that it was an "additional deadlock" and that it was not within his jurisdiction since appellants had failed to comply with the procedural prerequisites to arbitration contained in the Trust Agreement. The arbitrator nevertheless proceeded to review the evidence offered by appellants to prove the existence of the 1966 agreement, and then found, as he termed it, "a more significant basis" for rejecting it. AAA Case No. 1562 0004 82 Opinion and Award at 3 (Aug. 30, 1983). He concluded that the agreement "which was proper when made in 1966 ... is no longer relevant under ERISA as a basis for a ... purely fiduciary judgment as to the location of the plan offices."In deciding whether the arbitrator erred by refusing to consider the 1966 agreement, Judge Miner did not address the arbitrator's ERISA basis for exclusion, but focused instead on appellants' failure to process the question of the 1966 agreement to arbitration. Finding that the Trust Agreement permitted arbitration only of issues properly noticed under its terms, the district judge held that "Professor Sands was entirely correct in not recognizing the proposed arbitral issue of the 1966 agreement since the trustees had failed to comply with the mandated notice procedures." The district court reached its holding by relying on the well-established rule of this circuit that "procedural issues are for the arbitrator in the first instance ... and that the arbitrator's decision is then subject only to limited review." Ottley v. Sheepshead Nursing Home, 688 F.2d 883, 890 (2d Cir.1982) (citations omitted).
 
 
 22
 While we believe that this rule should be adhered to, we conclude that it is inapplicable to the specific facts presented herein. In the instant case it is not disputed that the question of whether to move the Fund office was properly before the arbitrator. The only dispute was whether the applicability of the 1966 agreement was a separate deadlock, not processed to arbitration. Professor Sands found that it was a separate deadlock and for that reason he stated initially that it was not before him. It was on the basis that Judge Miner upheld the arbitrator's refusal to consider the agreement.
 
 
 23
 Unlike the district judge, we do not believe that the 1966 agreement presents an issue separate and distinct from the issue that was arbitrated. Rather, as the arbitrator appeared to understand, it is at the heart of the matter that was properly processed to arbitration, namely, whether the Fund office should be relocated. In our view, the question of the validity and effect of the 1966 agreement is so inextricably related to the question of whether to move the office, that it is difficult to see how one could resolve the latter question without considering the former one.
 
 
 24
 Furthermore, upholding the arbitrator's exclusion of the agreement on the ground relied upon by the district court, would not serve the fundamental purpose underlying arbitration. Arbitration is intended to be a speedy, efficient and relatively inexpensive method of resolving disputes. Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11, 94 S.Ct. 2449, 2452-53, 41 L.Ed.2d 270 (1974). Treating the 1966 agreement as a distinct matter, and excluding it on the facts presented herein, would, as the district judge recognized, require that it be addressed at a subsequent arbitration, thus leading to separate and piecemeal proceedings to resolve the one substantive issue of where to locate the office. In addition, if, in a subsequent arbitration proceeding, the 1966 agreement is found controlling, Arbitrator Sands' award may well be overridden. Cf. Bell Aerospace Co. v. Local 516, International Union, UAW, 500 F.2d 921, 923 (2d Cir.1974) ("Courts will not enforce an award that is incomplete, ambiguous, or contradictory."). Therefore, we reverse the district court's decision insofar as it upholds the arbitrator on the ground that the 1966 agreement was not before him.
 
 
 25
 Our reversal on this ground, however, does not necessarily mean that the arbitrator's award should be vacated. As we noted previously, the arbitrator offered a second, "more significant" basis for rejecting the 1966 agreement--that it was in effect invalidated by ERISA. This ERISA ruling, which might or might not be correct, appears to us to be the real basis for the arbitrator's decision to exclude the agreement. While it might have been appropriate to uphold the arbitrator's award on the basis of the ERISA ruling, the district court did not address his ERISA holding, and the parties did not brief that issue before us. Accordingly, we remand to the district court with instructions to consider whether or not the arbitrator's award should be vacated on the basis of his ERISA holding.[3] While we do not pass on this question, we note that judicial review of an arbitrator's interpretation of the law is narrow. See, e.g., Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953) ("interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation" (footnote omitted)); Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1214 (2d Cir.1972) ("It is a truism that an arbitration award will not be vacated for a mistaken interpretation of law.").
 
 
 26
 Finally, we address appellants' requests for attorneys' fees. In their petition filed in the district court, appellants requested that attorneys' fees be awarded for two separate matters: first, that the Fund pay all necessary arbitration costs, including attorneys' fees; and second, that appellees (the Unions and the Union Trustees) pay the costs and attorneys' fees incurred by appellants in connection with the petition filed in the district court. Judge Miner denied the second request, and appellants do not contest that holding on appeal. Accordingly, that aspect of the district court's order is affirmed.
 
 
 27
 More troublesome, however, is the district court's denial of appellants' first request--an award for the fees incurred in arbitration. Appellants contend that Judge Miner misconstrued this request as one seeking to have appellees, rather than the Fund, pay such an award. We believe that the district court should not have entertained the question and, therefore, we need not address appellants' contention.
 
 
 28
 At a trustees' meeting on June 6, 1983, the Management Trustees made a motion seeking payment from the Fund of their attorneys' fees and other expenses incurred in arbitrating the question of relocating the Fund office. This motion was voted upon by the trustees and resulted in a deadlock. However, rather than bringing this new and distinct deadlock to arbitration--the method of dispute resolution agreed upon in the Trust Agreement--the Management Trustees simply included a request for these expenses in their petition to the district court.
 
 
 29
 We hold that because appellants failed to comply with the deadlock mechanism contained in the Trust Agreement, to which they are contractually bound, the district court should not have attempted to resolve this deadlock. Resolution of this attorneys' fee question is for an arbitrator, not a court in the first instance. Thus, we vacate the district court's order denying a fee award for the arbitration proceedings, so that this new deadlock may be submitted to arbitration as provided for in the Trust Agreement.
 
 III. CONCLUSION
 
 30
 For the foregoing reasons, the district court's memorandum decision and order, and the judgment entered thereon, is affirmed in part, reversed and remanded in part, and vacated in part.
 
 
 
 [1]
 Section 5.10 of the Trust Agreement provides:
 A deadlock shall be deemed to exist for the purposes of this section whenever (a) a proposal, nomination, motion, or resolution made or seconded by any two Union designated Trustees or any two Association Trustees is not adopted or defeated by the vote required by Section 5.9. [i.e., (i) by the concurrence of not less than four Trustees present at a duly convened meeting, or (ii) by the written concurrence of all the Trustees then acting] or (b) a quorum is lacking at a duly called meeting and such quorum is not secured at an adjournment of such meeting within fifteen days.
 Whenever a deadlock as hereinabove defined occurs, any two Trustees may give written notice to the remaining Trustees declaring that a deadlock exists and calling a meeting of the Trustees to agree upon an impartial umpire to break such a deadlock by deciding the dispute in question. Such notice shall specify the dispute in question causing such deadlock, and copies of such notice shall likewise be sent to the Union designated and the Association designated Employers. If the Trustees fail to select such impartial umpire within five days after such action is given, then any two or more of the Trustees may file a petition with the U.S. District Court in Albany, New York, requesting such court to appoint an impartial umpire to decide the dispute in question which caused such deadlock. The determination of any impartial umpire appointed pursuant to this section shall be binding as the act of the Trustees, but the Trustees shall have no personal liability therefor.
 
 
 [2]
 The parties have inconsistently referred to this agreement as a "1966" agreement and as a "1964" agreement. Because the district court assumed that 1966 is the correct year, we shall use that year for the purpose of this opinion
 The agreement allegedly allocated responsibility for the administration of the Fund by allowing the Union Trustees to select the attorney for the Fund, and allowing the Management Trustees to select the administrator of the Fund and the location of the Fund office.
 
 
 [3]
 This holding renders it unnecessary for us to address the district court's denial of appellants' motion to compel arbitration